## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DEVENION SENTELL HILL, JR.,**

**Plaintiff,**

v.                                                    **CASE NO. 23-3198-JWL**

**(FNU) TORRAZAZ, et al.,**

**Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Devenion Sentell Hill, Jr., a pretrial detainee who is housed at the Wyandotte County Detention Center (WCDC) in Kansas City, Kansas, filed this pro se civil action pursuant to 42 U.S.C. § 1983. (Doc. 1.) The Court reviewed the complaint and identified certain deficiencies that left it subject to dismissal in its entirety, so on August 24, 2023, the Court issued a memorandum and order (M&O) that explained those deficiencies and granted time to file an amended complaint that cured them. (Doc. 5.) Plaintiff timely filed his amended complaint on September 25, 2023. (Doc. 8.) The Court has reviewed the amended complaint and finds that it suffers the same deficiencies as the original complaint, which leave this matter subject to dismissal, so this matter will be dismissed without prejudice. The motion to proceed in forma pauperis (Doc. 6) will therefore be denied as moot.

### I.    Nature of the Matter before the Court

In the amended complaint, Plaintiff names as Defendants the Unified Government of Wyandotte County, Kansas; David Thaxton, warden of the WCDC; Major E. Torrazaz of the Wyandotte County Sheriff's Office (WCSO); WCSO Deputy Sheriff L. Slupski; Wellpath, LLC (Wellpath), the WCDC "medical provider"; D. Dull, Wellpath administrator; and Dr. (fnu) Omi,

1

who works for Wellpath. (Doc. 8, p. 1-4.) As the factual background for this complaint, Plaintiff alleges that when he arrived at WCDC on March 1, 2023, he was in a manic state; Plaintiff has been diagnosed with bipolar disorder. *Id.* at 8. He and Defendants Slupski and Torrazaz, along with two other named individuals and "other deputies," were in the booking area. *Id.* at 5. Defendant Slupski maliciously kneed Plaintiff in his right thigh in retaliation for Plaintiff expressing his First Amendment rights, then Defendant Slupski dropped Plaintiff or let him fall to the ground. *Id.* at 5, 8.

The incident left Plaintiff in pain, and he was taken to Providence Medical Center for x-rays.[1] He returned to WCDC at approximately 10:30 p.m. on March 2, 2023, at which time he informed Wellpath personnel of his bipolar diagnosis and his medication needs. *Id.* at 2, 8. Plaintiff then was housed in a pod; Defendant Slupski worked in that pod the following morning. *Id.* at 5. Plaintiff advises the Court that he limped for 2 weeks as a result of being kneed. *Id.* at 2.

Plaintiff received his medication from approximately March 16 until March 18, 2023. *Id.* at 8. The reason for the medication stopping is not clear, but at some point, Plaintiff began asking to receive his medication again. Between May 25 and 28, 2023, Plaintiff saw Wellpath employees who were unsure of what medication Plaintiff wanted. *Id.* at 8. After Plaintiff identified the medication, the Wellpath employee put in a referral for mental health services for Plaintiff. *Id.* Two days later, Plaintiff saw a mental health provider and the day after that, he saw Defendant Omi who agreed to reestablish the medication. *Id.* at 8. Plaintiff began receiving the medication the day after he saw Defendant Omi. *Id.*

---

[1] The Court notes that one of the exhibits Plaintiff has submitted in support of his amended complaint tells a different version of events. It states that on March 2, 2023, law enforcement responded to an armed disturbance call, took Plaintiff into custody there after he "attempted to drive a tractor trailer through a garage door," then "transported [Plaintiff] to Providence Medical Center for a possible injury. Once cleared, [Plaintiff] was transported to the [WCDC] and booked on a 48 hour hold." (Doc. 10, p. 9.)

Between June 1 and 12, 2023, Plaintiff repeatedly informed Defendant Wellpath and its nursing staff that he had been receiving a different pill that was not as effective as the earlier medication. *Id.* at 5, 8. He received no response and on June 12, 2023, he became manic, which led to him being placed in segregation due to his "bizarre behavior." *Id.* at 8. Liberally construing the pro se amended complaint, it appears that on June 12 and/or June 18, 2023, Plaintiff failed to listen to Defendants Slupski and/or Torrazaz and used profanity to or about them. *Id.* at 6.

Plaintiff did not receive a response regarding his sick calls until June 25, 2023. *Id.* at 8. He filled out a request to leave segregation and on June 29, 2023, Defendants Torrazaz and Slupski took him to a medical appointment. *Id.* at 8. While there, Defendant Torrazaz asked Plaintiff if there was anything they had missed that could explain Plaintiff's behavior. *Id.* When Plaintiff informed Defendant Torrazaz that he has bipolar disorder, Defendant Torrazaz said he would be filing charges as a result of "the incidents" on June 12 and June 18[2] "as a way for him to hit back after [Plaintiff] told him [Plaintiff] was getting out of jail due to [his] being presumptive probation." *Id.* at 8.

Six days before Plaintiff's anticipated release, two criminal charges of battery were filed against Plaintiff, which apparently caused his continued incarceration. *Id.* at 8; (Doc. 10, p. 8). It further appears from the exhibits submitted in support of the amended complaint that include the assertion that on the morning  of July 3, 2023, Plaintiff had a first appearance for two battery charges. (Doc. 10, p. 10.) Plaintiff's medication problem was not corrected until August 14, 2023. (Doc. 8, p. 8.) Defendant Omi, who eventually corrected the medication issue, had not been aware of the dosage change.[3] *Id.* at 8.

---

[2] Although the amended complaint refers to incidents on June 18, 2023, the exhibits submitted in support of the amended complaint include a handwritten document that says Torrazaz "threatened [Plaintiff] with sending video footage of [Plaintiff] misbehaving in G-Pod on 6/12/2023 to the judge." (Doc. 10, p. 10.)

[3] The exhibits submitted in support of the amended complaint include a grievance submitted on August 31, 2023, in

Liberally construing Count I of the amended complaint, Plaintiff alleges that Defendant Slupski violated his Eighth Amendment rights by kneeing him in his right thigh in retaliation for expressing his First Amendment rights, then using excessive force—in violation of the Eighth Amendment—by dropping Plaintiff or letting him fall to the ground. *Id.* at 5, 8. Plaintiff asserts that Defendant Slupski's actions were not motivated by a desire to maintain discipline. *Id.* at 8. Plaintiff also mentions in Count I Defendant Slupski being assigned on March 3, 2023 to work in the pod where Plaintiff was housed. *Id.* at 5.

As Count II, Plaintiff alleges Defendants Wellpath and Omi violated his Fourteenth Amendment rights by being deliberately indifferent to the serious medical need of Plaintiff's bipolar disorder. *Id.* Plaintiff also alleges that their indifference constitutes negligence, malpractice, and a violation of the Americans with Disabilities Act. *Id.* As supporting facts for Count II, Plaintiff points out that he informed Wellpath staff of his bipolar diagnosis on March 2, 2023, but when he saw medical staff on May 25 through May 28, they were unaware of what medication Plaintiff wanted. *Id.* He also notes in Count II that when medical staff put in a referral for mental health services, it was two days before Plaintiff saw a mental health provider and an additional day before he saw Defendant Omi. *Id.*

As Count III, Plaintiff asserts that Defendant Torrazaz was deliberately indifferent to his bipolar disorder, which "led to action of evil motive/intent violation [*sic*] of [Plaintiff's] 8th Amendment" rights. *Id.* at 6. As supporting facts for Count III, Plaintiff points to the conversation with Defendant Torrazaz at the medical appointment on June 29, 2023 and the criminal charges filed against Plaintiff. *Id.*

---

which Plaintiff alleged that a doctor told him on August 14, 2023 that his prescribed dosage was 750 mg three times a day "and it was changed but not by him." (Doc. 10, p. 6.) Plaintiff stated he told the doctor he had been taking 500 mg twice per day. *Id.* The disposition section of the grievance form, however, states that Plaintiff had been prescribed 500 mg twice per day and had been "prescribed the medication since 5/31/23." *Id.*

As relief, Plaintiff asks this Court to issue an injunction ordering WCDC and Defendant Wellpath to hire a qualified mental health provider; "[i]ssue an injunction of the Civil Rights of Institutionalized Persons Act"; issue declaratory judgment stating that Defendant Thaxton's failure to curb the physical abuse and harassment of Plaintiff, which constituted an assault and battery under state law, violated Plaintiff's Eighth Amendment rights; award punitive damages against Defendants Slupski and Torrazaz in the amount of $5,000.00; and award any other relief the Court deems proper. *Id.* at 7.

## II.    Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B); *Forney v. Oklahoma*, 172 F.3d 878 (10th Cir. 1999) (unpublished order and judgment) (applying 28 U.S.C. § 1915A(b)(1) to complaint brought by pretrial detainee). During this screening, the Court liberally construes the pro se amended complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

## III.  Discussion

### A.  Joinder

The Court's previous M&O identifying deficiencies in the original complaint explained:

> Some or all of the claims in the complaint are subject to dismissal because Plaintiff appears to have improperly joined parties and/or unrelated claims in this action. Federal Rule of Civil Procedure[4] 20(a)(2) governs permissive joinder of defendants and pertinently provides:
>
> > (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the

---

[4] The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel).

same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)(citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *Id.*

In sum, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

It is not clear from the complaint that Plaintiff's multiple claims involve all named defendants or that his claims against all defendants arise from the same transaction or occurrence and involve common questions of law or fact. Thus, the complaint violates both Rule 18(a) and 20(a)(2). It names multiple defendants not shown to be connected to all claims raised in the complaint by a common occurrence or question of fact or law and it contains claims not related to other claims against different defendants.

Plaintiff therefore is required to file an amended complaint stating (1) only those claims that arise against a single defendant or, if he wishes to name multiple defendants, (2) stating only those claims that arise from the same transaction or occurrence and have common questions of fact or law. Put another way, Plaintiff should set forth in the amended complaint the occurrence(s) he will hereinafter pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly joined defendants and occurrences. Alternatively, Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

(Doc. 5, p. 4-6.)

The amended complaint continues to violate Rule 18(a) and Rule 20(a)(2). For example, the amended complaint names Defendant Slupski as a defendant to Count I's allegation of an Eighth Amendment excessive force claim and names Defendant Wellpath as a defendant to Count II's deliberate indifference claim. These claims against these Defendants are not based on the same transaction or occurrence, nor is there a common issue of law or fact in the two claims. "Misjoinder of parties is not a ground for dismissing an action," and the Court is expressly authorized to "add or drop a party" or "sever any claim against a party." *See* Fed. R. Civ. P. 21. In this case, however, other deficiencies leave all claims against all parties in this matter subject to dismissal. Thus, dropping a party or severing a claim would not leave a plausible claim for relief.

### B. Personal Participation

This matter is subject to dismissal as it has been brought against Defendants Dull and Thaxton because the amended complaint fails to sufficiently allege their personal participation in any constitutional violation. As the Court explained in the M&O:

> An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).

(Doc. 5, p. 6.) With respect to the original complaint, the Court pointed out that two defendants were subject to dismissal "because the only three counts alleged in the complaint do not involve any direct allegations about these defendants' behavior." *Id.* In the amended complaint, Plaintiff again fails to allege personal participation by all named Defendants. None of the acts alleged are attributed to Defendant Dull or Defendant Thaxton.

To the extent that Plaintiff bases Defendant Thaxton's liability on his role as warden of the WCDC, the Court has already explained to Plaintiff that

> [f]or a supervisor to be held liable under § 1983, he or she must have personally
> participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841
> F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one
> of abstract authority over individuals who actually committed a constitutional
> violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

(Doc. 5, p. 6.)

Similarly, Defendants Torrazaz and Omi cannot be liable in this action merely because of
the supervisory nature of their roles. (*See* Doc. 8, p. 4  (noting Defendant Torrazaz "is responsible
for . . . supervision of deputies at WCDC" and "Dr. (Fnu) Omi . . . is generally responsible for
ensuring provision of medical care to inmates").) The amended complaint also contains allegations
of personal participation by Defendants Torrazaz and Omi in specific acts, however, and those
allegations are discussed below.

### C.   Failure to State a Claim

#### i.   Unified Government of Wyandotte County

The amended complaint fails to state a plausible claim for relief against the Unified
Government of Wyandotte County, another named Defendant. To impose § 1983 liability on the
county and its officials for acts taken by its employee, Plaintiff must show that the employee
committed a constitutional violation and that a county policy or custom was "the moving force"
behind the constitutional violation. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151
F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Department of Social Services*, 436 U.S. 658,
695 (1978)). Plaintiff has not alleged that any Wyandotte County policy or custom was the moving
force behind any of the alleged constitutional violations. Thus, his claim against the Unified
Government of Wyandotte County is subject to dismissal.

#### ii.   Wellpath, LLC

Similarly, the amended complaint fails to state a plausible claim for relief against

Defendant Wellpath. The Tenth Circuit has recognized that the § 1983 liability of a private entity acting under color of state law is subject to the same requirements as a municipal or county government. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). In other words, in order for Defendant Wellpath to be liable for acts taken by its employees, a Wellpath policy or practice must be the moving force behind the alleged constitutional violation; Wellpath cannot be held liable solely because one of its employees violated Plaintiff's constitutional rights. *See id.* (quoting *Monell*, 436 U.S. at 691). Plaintiff has not alleged in the amended complaint that any policy or custom of Wellpath, LLC was the moving force behind a constitutional violation. Therefore, his claim against Wellpath, LLC is subject to dismissal.

### iii.    Count I

Count I is subject to dismissal because Plaintiff has failed to allege sufficiently specific facts to support a plausible claim for unconstitutional retaliation or excessive force by Defendant Slupski. To the extent that Plaintiff intends to bring a retaliation claim, the Court explained in the M&O:

> "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed. Appx. 845, 848 (10th Cir.2001)(citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)). Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).
>
> > "To state a First Amendment retaliation claim, a plaintiff must allege '(1) he was engaged in constitutionally protected activity; (2)

> the [defendant's] actions caused [the plaintiff] injury that would
> chill a person of ordinary firmness from continuing to engage in that
> activity; and (3) the [defendant's] actions were substantially
> motivated as a response to [the plaintiff's] constitutionally protected
> conduct.'"

> *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015) (quoting
> *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009)). To show
> "substantial motivation," Plaintiff must "allege specific facts that, if credited,
> establish that 'but for' the defendant's improper retaliatory motive 'the incidents to
> which [Plaintiff] refers . . . would not have taken place." *See Allen v. Avance*, 491
> Fed. Appx. 1, 6 (10th Cir. 2012) (unpublished) (quoting *Peterson*, 149 F.3d at
> 1144).

(Doc. 5, p. 6-7.)

> With respect to the original complaint, the Court pointed out that

> Plaintiff makes only a conclusory allegation that he was the victim of retaliation by
> Defendant Sl[u]pski. To avoid dismissal of Count I, Plaintiff's amended complaint
> must allege sufficient facts to identify the constitutionally protected activity he was
> engaged in, to show that being kneed caused injury that would chill a person of
> ordinary firmness from continuing the constitutionally protected activity, and to
> support a plausible claim that Defendant Slopski would not have kneed him but for
> a retaliatory motive.

(Doc. 5, p. 7-8.)

The amended complaint again makes only a conclusory allegation that "Defendant Slupski

maliciously kneed [Plaintiff] in retali[a]tion of expressing [his F]irst [A]mendment right." (Doc.

8, p. 5.) This is insufficient to identify how Plaintiff was "expressing his First Amendment rights";

it remains unclear what constitutionally protected activity Plaintiff was engaged in that allegedly

led Defendant Slupski to retaliate by kneeing Plaintiff.  Accordingly, the amended complaint again

fails to state a plausible claim for unconstitutional retaliation.

Liberally construing the amended complaint, Count I also asserts a claim for excessive

force. Although Plaintiff identifies the Eighth Amendment as protecting him from excessive force,

he is a pretrial detainee. Pretrial detainees have a Fourteenth Amendment right not to "be punished

11

prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, it is the Fourteenth Amendment's "'Due Process Clause [that] protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989)). When a pretrial detainee brings an excessive force claim, he or she must allege facts that, if taken as true, plausibly support the conclusion "that the force purposely or knowingly used against him [or her] was objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97.

Unlike the Eighth Amendment test for excessive force against a convicted inmate, the Fourteenth Amendment test does not include a subjective prong. When determining if a pretrial detainee has pled a plausible claim of objectively unreasonable force, the Court considers "the 'facts and circumstances of each particular case,'" including factors such as the following: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of [any] security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among others. *Id.* at 397.

As noted above, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *See Hall*, 935 F.2d at 1110. Plaintiff must allege "more than labels and conclusions" and may not rely solely on "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. The amended complaint alleges only that Defendant Slupski "maliciously kneed" Plaintiff, not in an effort to maintain discipline but in retaliation for Plaintiff engaging in some unidentified but constitutionally protected action, and that Plaintiff suffered pain, received off-site medical

evaluation[5], and limped for two weeks. Plaintiff does not allege sufficient facts to allow the Court to consider the particular circumstances of the incident. Rather, he merely states broadly that Defendant Slupski's actions were "malicious" and occurred not as part of an effort to maintain order but as retaliation for unidentified but constitutionally protected behavior. This type of assertion, without more specific supporting factual allegations, is insufficient to state a plausible claim for relief. *See Hall*, 935 F.2d at 1110.

Moreover, not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *El'Amin v. Pearce*, 750 F.2d 829, 831 (10th Cir. 1984) (noting that a jailer's use of force against a prisoner is not always a constitutional violation). Even taking all the facts alleged in the amended complaint as true, it does not allege sufficient facts to plausibly support the claim that Defendant Slupski used objectively unreasonable force against Plaintiff, thereby violating Plaintiff's constitutional rights.

### iv.    Count II

Count II also fails to state a plausible claim for relief. Although Plaintiff generally alleges that Defendants Wellpath and Omi were unconstitutionally deliberately indifferent to his serious medical need of bipolar disorder, he does not sufficiently support this claim with factual allegations. Plaintiff asserts only that he informed Wellpath of his bipolar disorder on March 2, 2023 but that on May 25 through 28, 2023, Wellpath staff were unaware of what medication he wanted. (Doc. 8, p. 5.)

---

[5] Again, the amended complaint alleges at that Plaintiff was taken to Providence Medical Center for evaluation and treatment of injuries caused by Defendant Slupski's actions, but an exhibit submitted in support of the amended complaint reflects that Plaintiff was taken to Providence Medical Center for evaluation and treatment of injuries sustained during the events that led to Plaintiff's arrest, well before he ever reached WCDC.

Liberally construed, this appears to be a claim of unconstitutional cruel and unusual punishment based upon inadequate medical care. The Court's previous M&O explained:

> Under the due process clause of the Fourteenth Amendment, a pretrial detainee is "entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). The Tenth Circuit applies the same standard of deliberate indifference to medical needs to claims brought under the Eighth Amendment by convicted prisoners and those brought the Fourteenth Amendment by pretrial detainees. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).
>
> An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components, one objective and one subjective. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez*, 430 F.3d at 1305.

(Doc. 5, p. 10-11.)

The M&O warned Plaintiff that the original complaint "fail[ed] to allege sufficient facts to support a plausible claim that Plaintiff was unconstitutionally denied his medication"—the apparent basis for the claim as stated in the original complaint—and that "[e]ven liberally construing the complaint, there is no indication that any prison official had the required state of mind to support a plausible claim under the Fourteenth Amendment." *Id.* at 11. Similarly, in the amended complaint, Count II alleges Defendant Omi's deliberate indifference to Plaintiff's serious medical need—his bipolar disorder—but it fails to allege any facts that support a plausible claim

that Defendant Omi knew of and disregarded an excessive risk to Plaintiff's health or safety.

To the contrary, the amended complaint makes clear when Plaintiff asked Defendant Omi in late May or early June to reestablish his medication, the medication resumed the next day and that Defendant Omi was not aware of the dosage change of which Plaintiff now complains until August 2023, after which Defendant Omi quickly corrected the dosage. (Doc. 8, p. 2, 8.) Simply put, there is no indication in the amended complaint that any named Defendant had the required state of mind to support a plausible claim under the Fourteenth Amendment based on inadequate medical care.

In the portion of the complaint form for identifying the constitutional rights allegedly violated relative to Count II, Plaintiff also refers to negligence, malpractice, and the Americans with Disabilities Act (ADA). (Doc. 8, p. 5.)  "[N]egligence and gross negligence do not give rise to section 1983 liability." *Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992).  Similarly, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *See Estelle*, 429 U.S. at 106. Plaintiff does not further explain or articulate any negligence or malpractice claims he intended to bring in this matter.

Similarly, the ADA, 42 U.S.C. § 12101, *et seq.*, is a massive piece of legislation and Plaintiff does not indicate which provision he believes a Defendant in this matter may have violated, nor does he identify facts that support such a claim. *See Estate of Beauford v. Mesa County, Colo.*, 35 F.4th 1248, 1275-76 (10th Cir. 2022) (noting that Title II of the ADA extends to discrimination against inmates in a county jail and listing the elements for such a claim). Rather, Plaintiff's claim that the ADA was violated is the type of conclusory statement that, standing alone, fails to state a plausible claim for relief under § 1983.

### v.     Count III

Count III asserts that Defendant Torrazaz was unconstitutionally and deliberately indifferent to Plaintiff's bipolar disorder, which "led to action of evil motive/intent violation of [Plaintiff's Eighth] Amendment" rights. (Doc. 8, p. 6.) Liberally construing the amended complaint, it appears that the "action of evil motive/intent" Plaintiff refers to is related to Defendant Torrazaz' statements at the June 29, 2023 medical appointment and the criminal charges later filed against Plaintiff.

The online records of the Wyandotte County District Court reflect that on June 30, 2023, Plaintiff was charged with two counts of battery on a law enforcement officer, one which allegedly occurred on June 12, 2023, and one which allegedly occurred on June 18, 2023. *See State v. Hill*, Case No. WY-2023-CR-000854. The online records further reflect that on September 19, 2023, Plaintiff pled guilty to and was found guilty of one count and the other count was dismissed; sentencing is scheduled for next month. *Id.* This creates a problem in this matter for Plaintiff to the extent that he relies upon these criminal proceedings against him as a basis for Count III.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court "held that prisoners may not bring a § 1983 action that calls into question the lawfulness of their conviction until the conviction has been invalidated." *Johnson v. Spencer*, 950 F.3d 680, 692 (10th Cir. 2020). A ruling in Plaintiff's favor on Count III as articulated in the amended complaint would necessarily call into question Plaintiff's conviction, since it alleges that the charges were unconstitutionally brought. But Plaintiff's conviction stands and has not been invalidated in the state courts. Thus, his claim in Count III appears barred by *Heck*.

In addition, the criminal proceedings against Plaintiff are ongoing, with sentencing yet to occur. In *Younger v. Harris*, 401 U.S. 37, 46 (1971), the United States Supreme Court instructed

that principles of comity dictate that generally a federal court is not to intervene in ongoing state criminal proceedings unless "irreparable injury" is "both great and immediate." The Tenth Circuit has explained that "the *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

"The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003)). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. Appx. at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

Plaintiff's state-court criminal case is ongoing and the State of Kansas has an important interest in prosecuting crimes that violate Kansas laws. Moreover, the state courts provide Plaintiff the opportunity to present his challenges, whether in district court or, if necessary, on appeal or in other proceedings. Although "[t]he *Younger* abstention doctrine does not apply 'in case of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown,'" an individual asserting such circumstances must make "'more than mere allegations of bad faith or harassment.'" *Amanatullah v. Co. Bd. of Med. Examiners*, 187 F.3d 1160, 1165 (10th Cir. 1999). Plaintiff has not done so in this action. Thus, to the extent that he seeks relief that would enjoin or invalidate the current state-court criminal prosecution against, this Court must abstain.

## IV.    Conclusion

As set forth above, the amended complaint fails to comply with the joinder rules. Although the Court could sever claims and parties to ensure compliance with the rules of joinder, doing so would not save this action because it is subject to dismissal on other grounds. First, the amended complaint fails to allege that Defendants Dull and Thaxton personally participated in any constitutional violation and it fails to allege that any custom or policy of Defendant Wellpath or Defendant Unified Government of Wyandotte County was the moving force behind any constitutional violation. Thus, these four named Defendants are subject to dismissal from this matter because Plaintiff has failed to state a plausible claim for relief against them.

Moreover, no count states a plausible claim against a remaining Defendant upon which relief could be granted. Count I alleges that Defendant Slupski violated Plaintiff's constitutional rights, but fails to allege sufficient facts to support either a plausible claim for unconstitutional retaliation or a plausible claim for unconstitutional excessive force. Rather, it relies on conclusory and formulaic statements without specific supporting factual allegations. Thus, Count I is subject to dismissal for failure to state a claim upon which relief can be granted.

Similarly, Count II alleges that Defendant Omi violated Plaintiff's Fourteenth Amendment rights by being deliberately indifferent to Plaintiff's serious medical need:  his bipolar disorder. But nothing in the amended complaint, even liberally construed, constitutes a fact that supports the conclusion that Defendant Omi had the required state of mind. Thus, Count II is subject to dismissal for failure to state a claim upon which relief can be granted.

Count III alleges that Defendant Torrazaz was deliberately indifferent to Plaintiff's bipolar disorder, which led Defendant Torrazaz to cause criminal charges to be filed against Plaintiff as retaliation for Plaintiff's behavior. But the criminal charges at issue have now resulted in a state

court conviction and Plaintiff may not bring a § 1983 claim that questions the lawfulness of that conviction unless and until the conviction is invalidated. Moreover, this Court must abstain from interfering in ongoing state criminal proceedings under circumstances such as these. Accordingly, Count III is subject to dismissal.

In its previous M&O, the Court advised Plaintiff that in order to state a plausible claim for relief under 42 U.S.C. § 1983, he must specifically allege the direct personal participation of each named Defendant, he must clearly and specifically identify the constitutional provisions he believes were violated, and he must allege sufficient facts to support the conclusion that his claims are plausible. Because these deficiencies were present in the original complaint and remain in the amended complaint, the Court declines to allow Plaintiff an additional opportunity to amend his complaint. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'"). Rather, the matter will be dismissed without prejudice for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that this matter is dismissed without prejudice for failure to state a claim on which relief can be granted. Because the Court dismisses the matter, the pending motion for leave to proceed in forma pauperis (Doc. 6) will be denied as moot.

**IT IS SO ORDERED.**

DATED:  This 27th day of August, 2023, at Kansas City, Kansas.


S/ John W. Lungstrum

JOHN W. LUNGSTRUM
United States District Judge